# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DEREK NASH,

                Petitioner,                Case Number: 2:06-CV-10435

v.                                        HON. LAWRENCE P. ZATKOFF

SUSAN DAVIS,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Derek Nash, a state inmate currently incarcerated at the Huron Valley Men's Facility in Ypsilanti, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his conviction for involuntary manslaughter, for which he is serving a sentence of eleven years, ten months to forty years imprisonment. For the reasons set forth below, the Court DENIES the petition.

## I. Facts

Petitioner's conviction arises from the beating death of Jessie Deaner in his home in the City of Romeo on March 24, 2003.

Shawn Slanec testified that, at the time of the beating, he had been living in Deaner's home because he was going through a divorce. Petitioner would stay at Deaner's home from time to time. He had known Deaner and Petitioner for a period of years. Deaner would drink excessively on a daily basis; however, he never appeared to be drunk and did not act violently.

On the evening of March 24, 2003, Slanec arrived at Deaner's home at approximately 10:00 p.m. while Petitioner and Deaner were watching televison. Slanec fell asleep in the living room.

He was later awakened by sounds of Petitioner and Deaner arguing. He saw Petitioner hovering over Deaner, who was on the couch. Petitioner struck Deaner four times. Slanec yelled for Petitioner to stop. Petitioner became angry that Deaner was wearing Petitioner's clothes and tore them off Deaner. Shortly thereafter, the men put Deaner to bed. They splashed cold water on Deaner's face; he responded by saying he did not need medical attention. Slanec testified that he and Petitioner left Deaner to sleep. The following morning, Slanec discovered Deaner cold to the touch and called 911. Petitioner told Slanec to tell the authorities that Deaner had fallen down drunk.

The Macomb County Medical Examiner, Dr. Werner Spitz, testified that he conducted an autopsy of Deaner, which revealed bruising on Deaner's head, torso, arms, and legs. Dr. Spitz testified that the cause of death was a subdural hemorrhage, which means "brain injury sustained in a beating." Tr., 2/24/04, pp. 16–17.

Petitioner testified in his own defense. Petitioner testified that he knew Deaner since the two were in the fifth grade, and that they quickly became and remained good friends until Deaner's death. Over the past five years, Deaner developed a heavy drinking habit, which Petitioner occasionally tried to discuss with Deaner. When Deaner drank, he sometimes became violent. Petitioner testified that Deaner had a reputation for violence in the community and recounted several acts of violence that he witnessed.

Petitioner testified that, on the night of March 24, 2003, he planned to stay overnight at Deaner's home. Petitioner arrived at Deaner's home at approximately 7:00 p.m., and, according to Petitioner, Deaner already had imbibed a fifth of vodka. At approximately 10:30 p.m., Deaner ran out of alcohol and asked Petitioner to help him procure more. When Petitioner refused, Deaner

became angry. Petitioner testified that Deaner then punched him in the back of the head. He and Deaner began wrestling. Petitioner denied hitting Deaner with any force. He testified that he was not fearful of Deaner and was not defending himself against Deaner.

The two then finished fighting. Deaner had a bump on his head. Petitioner got him ice and Tylenol and put Deaner to bed at approximately midnight. Petitioner checked on Deaner a few more times and then fell asleep. The next morning Slanec awoke Petitioner and informed him that Deaner was dead. Petitioner advised Slanec to call 911.

## II. Procedural History

Following a jury trial in Macomb County Circuit Court, Petitioner was convicted of involuntary manslaughter. On March 25, 2004, he was sentenced as a fourth habitual offender to eleven years, ten months to forty years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.  The trial court's improper evidentiary rulings denied Appellant his right to present evidence in support of his defense and to impeach the credibility of the prosecution witness thereby denying Appellant a fair trial.

II. The evidence presented at Appellant's trial was insufficient to show beyond a reasonable doubt that he was not acting in self defense.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Nash*, No. 254862 (Mich. Ct. App. May 12, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Nash*, No. 129026 (Mich. Oct. 31, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus. Petitioner seeks habeas

relief on the same grounds raised in the Michigan appellate courts.

## III. Discussion

### A. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99 (1995) ("We give complete deference to state court findings unless they are clearly erroneous").

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

4

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11.

### B. Right to Present a Defense

Petitioner argues that habeas relief should be granted because the trial court violated his right to present a defense when it excluded evidence of the victim's criminal history and prior acts of

violence.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense -- a right to his day in court -- are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

*Washington*, 388 U.S. at 18 (emphasis supplied) (quoting *In re Oliver*, 333 U.S. 257 (1948)).

Further, the Supreme Court described the right to present a defense as follows:

> The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.*

This Court recognizes that, while the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)); *see also Chambers*, 410 U.S. at 302; *Washington*, 388 U.S. at 22–23.

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *Davis v. Alaska*, 415 U.S. 300, 317 (1973). Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690–691 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

Petitioner argues that he was prevented from introducing testimony regarding specific acts of violence committed by the victim. This evidence would have been used to bolster his claim of self-defense. The trial court held that Petitioner's counsel could elicit testimony regarding Deaner's general reputation for violence. With regard to specific acts of violence, including Petitioner's request to admit the entire criminal history of the victim, the trial court held that Petitioner's counsel could elicit such testimony only if Petitioner was aware of the specific act because such testimony would then bear upon Petitioner's state of mind and whether he acted in self-defense.

The Michigan Court of Appeals held that the trial court's decision was not an abuse of discretion. First, the state court noted that defense counsel elicited testimony from Petitioner, the victim's mother, and several other prosecution witnesses about Deaner's prior aggressive and violent behavior and criminal history. Second, the state court found that, although Petitioner argued on appeal that he needed to admit this testimony to support his self-defense theory, at trial, Petitioner, in fact, did not present a self-defense theory. Instead, Petitioner repeatedly denied acting in self-defense or being fearful of Deaner. Petitioner specifically testified that he was not fearful of Deaner. Based upon Petitioner's own testimony and the theory of the defense presented at trial, the court of

7

appeals concluded that "[b]ecause defendant did not claim at trial that he acted in self defense, evidence of the victim's prior acts of violence were not relevant to any fact that is of consequent to the determination of guilt." *Nash*, slip op. at 3. Thus, the state court concluded Petitioner's rights were not violated.

The Court agrees with the state court's assessment of Petitioner's defense and the relevance of the victim's prior acts of violence. The trial court placed reasonable restrictions on the admission of testimony regarding Deaner's acts of violence. Petitioner was not denied his right to present a meaningful defense by the court's imposition of these reasonable restrictions. Therefore, the Court denies relief on this claim.

### C. Sufficiency of the Evidence

Petitioner argues that insufficient evidence was presented at trial to sustain his involuntary manslaughter conviction where the prosecutor failed to show beyond a reasonable doubt that he was not acting in self-defense.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir.

8

1996), *cert. denied*, 518 U.S. 1027 (1996).

Under Michigan law, once evidence of self-defense is introduced, the prosecution bears the burden of proving the absence of self-defense beyond a reasonable doubt. *People v. Truong*, 553 N.W.2d 692 (Mich. Ct. App. 1996). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *People v. Barker*, 468 N.W.2d 492 (Mich. 1991).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the evidence claim, the Michigan Court of Appeals, stated, in relevant part:

> This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Lueth*, 253 Mich. App. 670, 680; 660 N.W.2d 322 (2002). In determining whether sufficient evidence was presented at trial to sustain a criminal conviction, this Court views the evidence in the light most favorable to the prosecutor and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich. 720, 723–724; 597 N.W.2d 73 (1999). . . . *People v Fennell*, 260 Mich. App. 261, 270–271; 677 N.W.2d 66 (2004). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich. App. 447, 452; 569 N.W.2d 641 (1997).
>
> Although the penalty for involuntary manslaughter is codified, MCL 750.321, the definition is found in common law. *People v Herron*, 464 Mich. 593, 604; 628 N.W.2d 528 (2001). In *Herron*, the Court stated:
>
>> This Court has defined the common-law offense of involuntary manslaughter as "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." [*Id.* (citations omitted).]
>
> Therefore, in order to convict defendant of involuntary manslaughter, the prosecution had to prove beyond a reasonable doubt that the victim died as a result of defendant's

9

committing an assault and battery against the victim with a specific intent to injure him. See CJI2d 16.10.

On appeal, defendant correctly argues that, once evidence of self defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt. *People v Fortson*, 202 Mich. App. 13, 20; 507 N.W.2d 763 (1993). However, no evidence of self defense was introduced and, as pointed out in our analysis of the previous issue, defendant did not even claim that he was acting in self defense. The prosecution, therefore, was not required to prove beyond a reasonable doubt that defendant did not act in self defense. In any case, the jury is not obligated to believe defendant's testimony, even if another witness did not contradict it. *People v Jackson*, 390 Mich. 621, 624–625; 212 N.W.2d 918 (1973).

Defendant testified that he was not defending himself against the victim, but rather, he was wrestling with the victim and may have hit him because the victim was "out of line." Shawn Slanec testified that he saw defendant kneel on top of the victim and hit him at least four times. The medical examiner testified that the victim died as a result of a subdural hemorrhage that could only have been sustained in a beating, not from falling down on a windowsill or out of bed, as defendant suggested. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant committed an assault and battery on the victim with the intent to injure him, causing death as a result.

*Nash*, slip op. at 3–4.

The Court finds this resolution of Petitioner's sufficiency of the evidence claim was neither contrary to nor an unreasonable application of clearly established federal law. The Court of Appeals' decision cited case law that plainly incorporated the *Jackson* standard and explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous. As the Michigan Court of Appeals noted, the jury reasonably could have chosen to disbelieve Petitioner's account of events. Further, "the assessment of the credibility of witnesses is generally beyond the scope of review" in a federal habeas corpus proceeding. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). Therefore, according the state court's factual findings a presumption of correctness, see 28 U.S.C. § 2254(e)(1), this Court concludes that the state court of

appeals' decision that all of the elements of the crime were satisfied did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


                                         s/Lawrence P. Zatkoff
                                         LAWRENCE P. ZATKOFF
                                         UNITED STATES DISTRICT JUDGE

Dated: October 29, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 29, 2007.

                                         s/Marie E. Verlinde
                                         Case Manager
                                         (810) 984-3290